IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Patricia M. Weinert, | Case No. 3:10 CV 1655 |
|         Plaintiff, | |
| | MEMORANDUM OPINION |
| -vs- | AND ORDER |
| Commissioner of Social Security, | JUDGE JACK ZOUHARY |
|         Defendant. | |

### INTRODUCTION

Plaintiff Patricia Weinert timely filed a Complaint (Doc. No. 1) against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny supplemental social security income ("SSI") benefits. This Court has jurisdiction under 42 U.S.C. § 405(g).

This case was referred to Magistrate Judge Armstrong for a Report and Recommendation ("R&R") pursuant to Local Rule 72.2(b)(2). After briefing on the merits by both parties, the Magistrate recommended that this Court affirm the final decision of the Commissioner to deny Plaintiff's claims (Doc. No. 26).

The matter is now before this Court on Objections to the R&R filed by Plaintiff (Doc. No. 27). Defendant did not file a Response. In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has reviewed the determination of the Magistrate *de novo*. For the reasons set forth below, this Court adopts the Magistrate's recommendation to affirm the Commissioner's decision.

**BACKGROUND**

The R&R accurately recites the relevant factual and procedural background from the record, and this Court adopts it in its entirety (Doc. No. 26 at 1–10). Briefly, Plaintiff was twenty-four years old when she filed her application for SSI with the Commission. The record contains no evidence that Plaintiff was engaged in substantial and gainful activity subsequent to her application for SSI. Her highest level of education is a GED.

Plaintiff has a history of treatment for generalized anxiety disorder ("GAD") and has received treatment for the last fifteen years (Doc. No. 26 at 3). Plaintiff was sexually assaulted in August 2004, and she alleges this assault exacerbated her anxiety disorder, claiming the onset of disability approximately seven months later (Doc. No. 17-2 at 20). The Bureau of Disability Determination referred Plaintiff to Dr. Zake, for a consultive examination, in August 2007 (Doc. No. 17-3 at 40).

Dr. Zake diagnosed Plaintiff with symptoms of GAD, panic disorder, and agoraphobia. He concluded that her ability to work with others and her ability to withstand the stress of day-to-day work was extremely impaired (Doc. No. 26 at 5–6). Plaintiff's file was then reviewed by state-agency physicians. While agreeing with Dr. Zake's diagnosis, these reviewing physicians disagreed with the scope of Plaintiff's limitations, concluding that Plaintiff had moderate limitations (Doc. No. 26 at 6).

Plaintiff continued to seek treatment for her anxiety disorder and depression. Evaluations of her mental health during this time ranged from a "complete inability to function independently outside the area of one's home" to merely mild restrictions on "activities of daily living" (Doc No. 17-15 at 33). Throughout 2008 Plaintiff saw treating physician, Dr. Uddaraju, who treated her for panic attacks, depression, and tendinosis in the right thigh (Doc No. 26 at 7–9). By November 2008, Dr. Uddaraju noted Plaintiff's panic attacks were "letting up" and her main problem was with the pain

in her right thigh (Doc. No. 26 at 8). Plaintiff's rehabilitation prognosis from this thigh injury was excellent (Doc. No. 26 at 10).

Plaintiff applied for SSI benefits in June 2007, alleging disability since March 2005 (Doc. No. 17-3 at 7). In May 2009, after an administrative hearing and review of the medical record, Administrative Law Judge ("ALJ") Burlison determined that Plaintiff was not disabled (Doc. No. 17-2 at 24). The Appeals Council denied review and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. The Magistrate's R&R fully adopted the decision of the Commissioner, to which Plaintiff now objects.

## **STANDARD OF REVIEW**

In reviewing the denial of SSI benefits, this Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citing 42 U.S.C. § 405(g)). Judicial review of the ALJ's decision is limited to "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health and Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)).

Even if substantial evidence, or indeed a preponderance of the evidence, supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). However, procedural errors can be a basis for overturning the decision of the Commissioner, even if that decision is supported by substantial evidence. *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

### STANDARD FOR DISABILITY

Eligibility for SSI benefits is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" under Social Security is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). In addition, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. . . ." *Walters*, 127 F.3d at 529 (citing 42 U.S.C. § 423(d)(2)).

The Commissioner's regulations governing the five-step evaluation for SSI benefits are found at 20 C.F.R. § 416.920, respectively:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

    4.        Determine the claimant's residual function capacity and whether claimant can perform past relevant work.

    5.        Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step analysis, the claimant has the burden of proof in steps one through four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five, in determining whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*; *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The court considers claimant's residual functional capacity, age, education, and past work experience to determine if claimant could perform other work. *Walters*, 127 F.3d at 529. Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 404.1520(b)–(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

The ALJ denied Plaintiff's request for benefits under step five, finding that while Plaintiff is unable to perform any past relevant work, considering her age at the alleged onset date, education, work experience, and residual functional capacity, "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" (Doc. No. 17-2 at 24). The Magistrate agreed.

Plaintiff now raises four objections to the R&R: (1) the Commissioner failed to accord proper weight to the opinion of Plaintiff's treating physician; (2) the hypothetical given to the vocational expert did not sufficiently describe Plaintiff's limitations; (3) the Commissioner improperly assessed Plaintiff's credibility; and (4) the Commissioner did not account for limitations arising from Plaintiff's agoraphobia.

**Objection 1: Plaintiff's Treating Physician**

The opinions of treating physicians are given controlling weight "absent justifiable reasons—made on the record—for discounting those opinions." *Blakely*, 581 F.3d at 408 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *4–5). The ALJ must give controlling weight if the treating source opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2).

If the treating physician opinion is not given controlling weight, the ALJ should consider six-factors to determine how much weight to accord that opinion. *Id.* Those factors are:

1. Length of the treatment relationship;
2. Nature and extent of the treatment relationship;
3. Supportability;
4. Consistency;
5. Specialization; and
6. Other factors brought to the attention of the ALJ by the claimant.

20 C.F.R. §§ 404.1527(d)(2)–(6).

Based on these factors, the ALJ must provide "good reasons in [the] notice of determination or decision for the weight . . . give[n] . . . ." 20 C.F.R. § 404.1527(d)(2). The reasons behind this procedural requirement are twofold. First, the "good reasons" requirement ensures meaningful appellate review of the determination. Second, claimants must be able to discern the reasons why the ALJ disagreed with the opinion of their treating physician. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). "[F]ailure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Id.*

6

It is undisputed that Dr. Uddaraju is Plaintiff's treating physician who concluded that Plaintiff was severely limited in her ability to function outside the home. Because the ALJ accorded this opinion little weight (Doc. No. 17-2 at 22), "good reasons" must be provided. An ALJ may rely on medical records to find "good reasons" or the claimant's own testimony. *See Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 658 (6th Cir. 2009) (affirming district court's decision to adopt the Magistrate's R&R and deny benefits). Here, the ALJ relied on both.

The ALJ fully considered the record from Dr. Uddaraju concerning Plaintiff's anxiety disorder and tendinosis in her right leg as well as the diagnosis in the Mental Impairment Questionnaire. In assigning little weight to the questionnaire, the ALJ concluded:

> [T]he undersigned Administrative Law Judge finds the questionnaire conclusory and against the weight of the record as a whole. The conclusions reached in the questionnaire are not supported by medically acceptable signs, symptoms, and/or laboratory findings. A review of the exhibit file fails to identify any subjective or objective medical findings supporting a conclusion which prevents the claimant from doing work of any kind. Although there is clear evidence that the claimant suffers from symptoms of anxiety, depression and post traumatic stress disorder, the claimant has a very limited record of treatment and she appears to be functioning fairly well in between periods of treatment. There is limited medical evidence in the record from Dr. Uddaraju and it does not explain the basis for, nor support the limitations noted in this questionnaire. As such, the questionnaire is accorded little evidentiary weight.

(Doc No. 17-2 at 22).

The record supports this conclusion. Like the plaintiff in *Rabbers*, Plaintiff here could perform several daily activities, including the ability to prepare meals, grocery shop, and manage her own finances. *Compare Rabbers*, 582 F.3d at 658, *with* (Doc. No. 17-2 at 22). Additionally, the ALJ found that Plaintiff's medical record indicated that her condition was improving (Doc. No. 17-17). Dr. Uddaraju himself indicated that Plaintiff was "feeling better" (Doc. No. 17-17 at 24).

These "good reasons" clearly address the lack of consistency and supportability for Dr. Uddaraju's diagnosis of severe impairment. The ALJ has met her burden of relying on "good reasons" to accord little evidentiary weight to the treating physician's diagnosis.

Plaintiff next objects to the ALJ's opinion because it gives weight to the state-agency physicians, Dr Swain and Dr. Goldsmith, even though their opinion was made before much of Plaintiff's treatment had been documented (Doc No. 27 at 5). But chronology alone is not enough to undermine the weight given to an earlier diagnosis, especially when the ALJ gives clear consideration to how a claimant's condition might have changed in the interim. *Blakely*, 581 F.3d at 409. The ALJ here noted that Plaintiff's condition seemed to have worsened since the state-agency review, but that condition did not warrant a finding of total disability (Doc. No. 17-2 at 22). Just because a medical diagnosis comes earlier in time does not mean an ALJ cannot find it persuasive.

Plaintiff also objects to the ALJ's decision to give little weight to the treating physician on the grounds that the ALJ "has no special expertise to make her own psychiatric assessment of Plaintiff's condition based on review of the treatment notes" (Doc. No. 27 at 4). If this had been the case, then Plaintiff's objection would be well-taken because "ALJs are not mental health experts. Depression, anxiety, and other mental health disorders require specialized training to evaluate and diagnose." *Winning v. Commissioner of Soc. Sec.*, 661 F. Supp. 2d 807, 823–24 (N.D.Ohio 2009) (citing *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995). But the ALJ did not make her own psychiatric evaluation of Plaintiff; rather, she accepted the diagnosis of Dr. Uddaraju before looking at the whole record to determine the scope of Plaintiff's employment limitations. This included considering the diagnoses of examining physician Dr. Zake and licensed clinical social worker Ms. Kriston-Depew, who largely agreed with the diagnosis of Dr. Uddaraju, before making a determination (Doc. No. 17-2 at 20). This

is precisely the method prescribed by the Code of Federal Regulations and the Sixth Circuit. *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) ("20 C.F.R. § 404.1527(e)(1) explicitly states that the conclusion of disability is reserved to the Secretary . . . .").

Based on the entire record, the ALJ did not err in finding that Plaintiff's employability was moderately limited. This Court finds substantial evidence supports the ALJ's decision to accord little weight to Dr. Uddaraju's opinion regarding Plaintiff's limitations.

**Plaintiff's Objection No. 2: Hypothetical Given to the Vocational Expert**

Plaintiff's second objection asserts that the hypothetical posed to the Vocational Expert ("VE") did not sufficiently account for Plaintiff's mental limitations (Doc. No. 27 at 7–9). The VE found that Plaintiff could perform unskilled medium and unskilled light occupations such as: dishwasher, packager, assembler, and folder. The ALJ posed the following hypothetical:

> We have a hypothetical person here . . . who is a young individual, educated through high school by virtue of a GED, who has the following limitations: In terms of exertional limitations . . . I would say probably a medium level of work, but as I said, no climbing, occasional postures and . . . not working at heights or not operating dangerous moving machinery. In terms of non-exertional limitations we would be looking at work that was simple and routine and did not require more than brief and superficial contact with the public in general.

(Doc. No. 17-3 at 33–34).

Hypotheticals must accurately reflect the limitations arising from a claimant's physical and mental impairments. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). However, the ALJ need not list every medical condition the claimant has when reciting the hypothetical, only his or her limitations. *Foster v. Halter*, 279 F.3d 348, 356 (6th Cir. 2001). If the treating physician's opinion on limitation is supported, or given weight, it is error for the ALJ to exclude those limitations

9

from the VE's hypothetical. *Id.* Thus, if Dr. Uddaraju's opinion controls, the hypothetical is invalid because it inaccurately depicted Plaintiff's limitations.

As explained above, the ALJ's decision to accord little weight to Dr. Uddaraju's opinion on limitations is supported by substantial evidence. This Court is satisfied that this hypothetical accurately describes a person with moderate limitations. The ALJ clearly accounted for Plaintiff's psychiatric disorders by setting non-exertionals that limited Plaintiff's contact with the public to "brief and superficial" interactions as well as work that was routine and simple (Doc. No. 17-3 at 33–34). This hypothetical is in line with the limitations set by reviewing state-agency physicians who found that Plaintiff was only moderately limited (Doc. No. 17-14 at 11–12). Plaintiff's second objection is overruled.

### Plaintiff's Objection No. 3: Plaintiff's Credibility

Plaintiff also objects to the ALJ's assessment of Plaintiff's credibility. "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247. As long as the ALJ's credibility determinations "find support in the record" then the ALJ's decision should not be disturbed. *Id.* Like assigning weight given to a treating physician's opinion, credibility determinations must be sufficiently clear so as to allow for meaningful appellate review. *See id.* at 428 n.5.

The ALJ was "not persuaded by the claimant's statements concerning her impairments and their impact on the ability to work" and found "that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely plausible to the extent alleged" (Doc. No. 17-2 at 20–22 ). The ALJ discussed, at length, the reason for her credibility determination:

10

> The claimant is able to care for her personal needs, prepare meals and dishes. She does laundry, washes windows, grocery shops and she pays her bills and managers her finances. In addition, she watches television, walks several times a week and walks her mother's dog . . . The undersigned finds the degree of limitations to be not supported by the objective medical evidence of record. For these reasons the undersigned Administrative Law Judge finds the claimant not fully credible and her subjective symptoms are given limited weight.

(Doc. No. 17-2 at 20).

In any credibility determination, "[c]onsistency of the various pieces of information contained in the record should be scrutinized." *Rogers*, 486 F.3d at 247. The ALJ found that Plaintiff's own statements concerning her symptoms and activities were not consistent with the objective medical record (Doc. No. 17-2 at 20). For example, Plaintiff testified that she is unable to work (Doc. No. 17-3 at 27–28), yet Plaintiff was only moderately limited, and Plaintiff's testimony about her daily activities is inconsistent with record medical evidence showing her able to independently function on a day-to-day basis.

The ALJ's credibility assessment of Plaintiff was sufficiently clear, it was supported by substantial evidence in the record, and was based on discrepancies in Plaintiff's actual testimony. Thus, this Court finds that the ALJ's assessment of Plaintiff's credibility was valid and Plaintiff's third objection is overruled.

**Plaintiff's Objection No. 4: Plaintiff's Agoraphobia**

Plaintiff's final objection alleges that the ALJ failed to account for Plaintiff's agoraphobia in determining that she was not entitled to SSI benefits. The omission of a severe impairment in the VE's hypothetical is not error as long as symptoms relating to that impairment are included in the VE's hypothetical. *Thomas v. Sec'y. of Health and Human Servs.*, 151 F.3d 1034 at *4 (7th Cir. 1998). Although the ALJ failed to specifically mention agoraphobia, the ALJ did discuss Plaintiff's

11

panic and anxiety brought on by the agoraphobia (Doc No. 17-2 at 21).  Due to these symptoms, the ALJ's hypothetical to the VE limited the Plaintiff to "brief and superficial contact with the public in general" (Doc. No. 17-3 at 34).  The ALJ did not err in failing to specifically use the word "agoraphobia" when its symptoms and effects on the Plaintiff were clearly described in the hypothetical.

## CONCLUSION

For the foregoing reasons, this Court finds the ALJ's decision to deny benefits was based on substantial evidence.  This Court adopts the Magistrate's R&R (Doc. No. 26) to affirm the Commissioner's decision.

IT IS SO ORDERED.

                                               s/ *Jack Zouhary*
                                               JACK ZOUHARY
                                               U. S. DISTRICT JUDGE

                                               September 13, 2011